THOMAS W. TALLMAN, *et al.*, v. EMELINE M. JONES.

1. IRRELEVANT INSTRUCTIONS—*Effect of.*  Where the trial court gives an
instruction to the jury which is good law in the abstract, but which is
irrelevant, and not applicable to the case under the evidence, the court
does not commit such an error as will require a reversal of the judgment,
unless the irrelevant instruction may have misled the jury, or unless it
may in some way have prejudiced the rights of the plaintiff in error.

2. MARRIED WOMEN; *Power to Make Purchases, and Carry on Trade.*  Any
married woman, under § 4 of the Married Woman's Act, whether she
previously has any separate estate of her own or not, may carry on any
trade or business; and for the purposes of carrying on such trade or
business may purchase on credit such property as is necessary to carry on
such trade or business, and may hold the same as her sole and separate
property.

3. TRESPASS; *Mortgaged Property; Damages.*  The mere fact that one per-
son mortgages goods to another does not authorize any person except the

mortgagee or some person claiming under him to take the property from the mortgagor; and if any such person other than the mortgagee or some person claiming under him does so take said property, he is liable for more than merely nominal damages.

### Error from Bourbon District Court.

ACTION by *Emeline M. Jones* to recover the value of a stock of goods seized and sold by *Tallman* as sheriff on an execution issued on a judgment against D. R. Cobb and Edward Jones, partners as "Cobb & Jones." The goods were alleged to be worth $3,000. Cobb & Jones had kept a dry-goods store in the town of Marmaton from 1864 to 1870, when they were sold out under execution by one of their creditors. Their stock of goods was bought at such sale by one Foster, who carried on business as a merchant in the same store-room formerly occupied by C. & J. until August 1871. Foster did not give personal attention to said business, but entrusted its management to said Edward Jones as his agent. In August, 1871, Foster sold his stock of goods to said *Emeline M. Jones*, who was the wife of said Edward Jones, and said Edward from that time, as agent and clerk for his wife, remained in the store and assisted in the management of the business. In February, 1872, *Tallman* as sheriff, took the goods in said store and sold them at sheriff's sale, for $1,481.12. The goods were seized under an execution in favor of the administrator of D. Foreman, issued upon a judgment against Cobb & Jones, which was rendered by the district court of Bourbon county, in July, 1871. At the time the sheriff made the levy said Edward Jones was in charge of said store, conducting the business thereof. It was claimed on the part of the sheriff, (representing the execution-creditor,) that the goods were in the possession of said Edward Jones, and that they belonged to him, and not to his wife. The action was against the sheriff and his sureties, on his official bond, and was tried at the December Term 1872 of the district court, (C. W. B., judge *pro tem.*, presiding.) The jury found in favor of the plaintiff, and assessed her damages at $1,915.50. New trial

refused, and judgment on the verdict. *Tallman* and his co-defendants bring the case here on error.

*McComas & McKeighan,* for plaintiffs in error:

1. The district court, among other things, gave to the jury the following instruction:

"The exclusive, peaceable possession of goods and chattels, under a claim of ownership, is *prima facie* evidence of ownership, and a person in such possession may maintain an action against a mere trespasser, and recover the full value of such goods."

Now, the theory of defendant in error was, that she purchased these goods, and Edward Jones continued in possession of the store as her clerk and salesman. She says she was in the store when the sheriff came in to levy, and that Mr. Jones had stepped out, while the sheriff says she was not, and that Jones was in. Our claim is, that this sale from Foster was to Edward Jones, and that the name of his wife was introduced to cover up the goods from his creditors. This being the pivot of the dispute, what light does this instruction throw upon the case? None. To give it any application to the case, you must assume that this possession of Jones in the store was not in fact and truth his own possession, but that of his wife, held for her as her agent, and that the sheriff, who represents the creditors of Jones, was a mere trespasser, without any claim or color of right. Here Jones had held possession of these goods from the 11th of August, 1871, until they were taken on execution. She claims the possession was hers. The creditors claim that it was not hers; the theory of the court was that *this possession* itself furnished *prima facie* proof that it was her possession. This is bad logic, because the right of possession here, and the ownership of the goods, must be in the same person; and to assume the one, and argue from such assumption the existence of the other, is reasoning in a circle. Either this instruction is justly liable to this criticism, or else it simply asserts an abstract proposition of law that has no application to, and

can perform no office in this case, except to mislead the jury. The exact converse of the doctrine of this instruction is true, namely, "Possession by the husband is supposed to be in his own right, until the contrary be made to appear." "In a contest with the husband's creditors, proof of the wife's interest must be shown by clear evidence." (53 Penn. St., 400.) "Where the husband manages the store as salesman, the presumption is, that the goods belong to him; if the wife claims as her separate property against her husband's creditors, *she must satisfy the jury by clear and indisputable evidence that the goods in question were her own separate property.*" (57 Penn. St., 428; 3 Green, (N. J.) 472; 25 Cal., 225; 38 Miss., 350; 37 Penn. St., 155, 247, 433.)

2. Instructions asked by the plaintiff in error, and refused, present this question: Where a married woman has no separate property whatever, can she and her husband upon their joint credit purchase a stock of goods in the wife's name, to be paid for out of the business to be conducted by the husband, as her agent, when the wife has no separate estate? and are the goods thus purchased, and the profits and increase of the business thus carried on, exempt from the execution of the husband's creditors?

If this question can be answered in the affirmative, then the ruling of the court was correct, otherwise erroneous. We say in this case these goods belonged to the husband, and we had a right to have this hypothesis put to the jury. There are certain kinds of property owned by a married woman exempt from the control of her husband and his creditors, (ch. 62, p. 563, Gen. Stat.;) 1st, the property owned at the time of the marriage, and the issues and profits thereof, are so exempt; 2d, the earnings of any married woman from any trade or business carried on by herself, is so exempt. But with these exceptions the rights of a married woman are, in this state, governed by the common law. Can a man who has failed in business buy a stock of goods jointly with his wife, upon their joint credit, pay for them out of the profits and proceeds of the goods, devote his labor to carry on the

business *as agent for his wife,* and by this device protect the goods from his creditors? If the wife had bought these goods upon credit given *to her,* or if the goods were paid for in the first place out of her separate property, and if the business had been increased by the labor of the husband, the law might be different; but the doctrine of the district court was, that where the wife and the husband purchased the goods in the first place upon their joint credit, and where the business was conducted and managed by the husband, *the wife having no separate estate,* and adding nothing to the stock by her labor or services, that still she might own the goods as against her husband's creditors. We think this very question is decided in the case of *Barringer v. Stiner,* decided by the supreme court of Penn., 4 Am. Law Reg., 559. See also, 55 Ill., 352; 47 Mo., 350.

3. In this case the goods were mortgaged by the defendant in error and her husband, to L. P. Foster. If the goods in fact were purchased by her as she claimed, then under this mortgage "the legal title thereto" was in Foster, the mortgagee. (Gen. Stat., ch. 68, § 15.) If the "right of possession" and "the legal title" to this property was in Foster at this time, there being no stipulation in the mortgage to the contrary, then the only interest the defendant in error could have was a mere equity of redemption, and the court should have given the instructions asked for by plaintiffs in error upon this point.

4. This court will take judicial notice that M. V. Voss is judge of this district, and not C. W. Blair. 56 Ill., 304.

*Hulett & McCleverty,* for defendant in error:

1. We submit there is no error shown by the record prejudicial to plaintiffs in error. The law undoubtedly is, in Kansas, that a married woman may acquire and hold property, free and clear of all liabilities of the husband. The question presented to, and decided by the jury was: Who was the owner of this stock of goods? They answered it by their verdict in favor of the defendant in error. The question of

possession was a fact, submitted to the jury, and their verdict is conclusive. There was no intimation of any kind given by the court as to who had possession, either this defendant in error, or her husband, Edward Jones.

2. The instructions asked by plaintiff in error, whether good law or not, make no figure in this action. The evidence shows that the defendant in error was purchaser of the original stock of goods, and all subsequent purchases. And it also shows a want of any evidence of increase or profit, either by the skill and labor of the husband, or otherwise. We submit that said instructions asked by plaintiffs in error are not law; but if they are, there was no evidence to warrant the court in submitting them to the jury.

3. The mortgage executed by defendant in error and Edward Jones to Foster embraced both real and personal property, and was executed by the husband and wife because required by Foster in making sale to defendant in error, and has no bearing in this case to relieve plaintiff in error from his liability. The jury having decided Mrs. E. M. Jones to have had the possession of the goods taken in execution, the sheriff finds no defense in showing title in Foster.

4. The court will not only take judicial notice that M. V. Voss is judge of this district, but will also conclude that C. W. Blair was the lawful judge *pro tem.*, unless the contrary appear. The case cited by counsel for plaintiffs in error, (56 Ill., 304,) merely decides that under their practice a bill of exceptions must contain the style and term of court allowing the same.

The opinion of the court was delivered by

VALENTINE, J.: The plaintiff in error, Thomas W. Tallman, who was defendant below, was sheriff of Bourbon county. He levied an execution on a stock of goods, and sold the same as the property of Edward Jones. Afterward Emeline M. Jones, the defendant in error, plaintiff below, and wife of said Edward Jones, sued said Tallman for the value of said goods. The real question litigated was, who

did said goods belong to — to Edward Jones, or to his wife Emeline M. Jones? The sheriff found the goods in the possession of Edward Jones, but Emeline M. Jones claimed the same as her property. She claimed that they were in the possession of Edward Jones merely as her agent, and therefore that his possession was in fact her possession. The court below instructed the jury that "the exclusive, peaceable possession of goods and chattels, under a claim of ownership, is *prima facie* evidence of ownership, and a person in such possession may maintain an action against a mere trespasser, and recover the full value of such goods." This is good law in the abstract, although we do not see that the instruction has any application to this case. Mrs. Jones did not have possession of the property at all, except through her agent, Mr. Jones; and Mr. Jones who had actual possession of the property never claimed to own the same. As against every person except Mr. Jones, or some other person claiming under him, Mrs. Jones had constructively the legal possession of the property; for as against such persons the possession of Mr. Jones was merely the possession of Mrs. Jones. But as against Mr. Jones, or some person claiming under him, Mrs. Jones did not have possession of the property at all, or at most she did not have that kind of possession which proves ownership. In the present case the sheriff claims under Mr. Jones by virtue of said execution and levy, and therefore has a right to rely upon Mr. Jones' actual possession of the property; and hence we think the instruction is inapplicable to the present case. Actual possession and ownership were not united in the same person, as they should be in order to prove a *prima facie* case of ownership. But the instruction is merely inapplicable. We cannot see how it could have misled the jury, or in any other manner have prejudiced the rights of the plaintiff in error. The court below did not give the slightest intimation as to who had the possession of said property. The court did not even intimate that the possession of Mr. Jones could under any circumstances be construed to be the possession of Mrs. Jones.

1. Irrelevant instructions.

Besides, there was ample evidence besides possession, and even against the possession, of Mr. Jones, to prove *prima facie* that Mrs. Jones was the owner of the goods, *and there was nothing shown to rebut this prima facie case.* The evidence clearly shows that Mrs. Jones purchased said goods herself, and for herself, and that she purchased them from a person not her husband, and that her husband did not and was not to pay for them. She was to pay for them. She purchased them, however, on credit; and she and her husband gave their promissory notes, and a mortgage on the goods and on a certain piece of real estate to secure the deferred payment for the goods. And prior to the purchase of said goods Mrs. Jones had no *separate* estate of her own. In whom the title to said real estate was vested, however, is not shown. Mrs. Jones expected to pay for said goods from sales made thereof, and it was not intended or expected that Mr. Jones should pay any portion thereof. Section 4 of the married woman's act reads as follows:

2. Married women. Power to make purchases, and to carry on trade.

"SEC. 4. Any married woman may carry on any trade or business, and perform any labor or services, on her sole and separate account; and the earnings of any married woman, from her trade, business, labor or services, shall be her sole and separate property, and may be used and invested by her in her own name." (Gen. Stat., 563.)

And under the facts of this case and the foregoing statute the only questions to be considered are as follows: First, is said § 4 confined in its application to such married women only as have separate estates, or may it apply to "any married woman" who "may carry on any trade or business on her sole and separate account?" Second, if said section may apply to any married woman, then may a married woman who has no separate estate prior to her entering into trade or business, purchase property to carry on such trade or business, and make that property as well as her subsequent earnings from such trade or business her sole and separate property? We must answer both these questions in the affirmative. The statute provides that "any married woman" (and this in-

cludes all married women,) "may carry on any trade or busi-
ness," etc.; and if "any married woman may carry on any
trade or business," then by necessary and unavoidable impli-
cation she must be allowed to possess and own everything
necessary to carry on that trade or business.   Other portions
of the married woman's act provide for a married woman
owning other property, separate and apart from her husband.
For instance, § 1 of said act provides that all property owned
by a woman prior to her marriage, and the rents, issues,
profits and proceeds thereof, and all property which may
come to her by descent, devise, bequest, or the gift of any
person except her husband, shall be and remain her sole and
separate property.   The latter part of said § 4 provides that
"the *earnings* of any married woman from her trade, business,
labor or services shall be her sole and separate property."
While the first part of said § 4 provides, as we have before
said, by necessary and unavoidable implication that all prop-
erty necessary to carry on the trade or business of a married
woman may be owned by her and be her sole and separate
property, she may never before have owned any property,
and although she may have had to purchase such property on
credit.   Any other construction of the statute would be vir-
tually saying that no married woman except such as previously
have a separate estate of their own can engage in any kind of
trade or business.

The mere fact that Mrs. Jones mortgaged said goods does
not authorize any person except her mortgagee, or some per-
son claiming under him, to take the property
from her, and if any such person other than the
mortgagee or some person claiming under him does so take
said property, he is liable for more than merely nominal
damages.

3. Trespass;
damages.

Counsel for plaintiffs in error say in their brief as follows:
"This court will take judicial notice that M. V. Voss is
judge of this district, and not C. W. Blair."   What is meant
by this language it is difficult to understand.   There is noth-
ing in the record except a certain bill of exceptions that

shows that the case was tried or judgment rendered by any person except the regular judge of the district court of Bourbon county. On the contrary, the record with the exception of said bill of exceptions, would seem to show that the case was regularly tried and judgment rendered by the regular judge of said court. It is true, said bill of exceptions shows that the case was tried and judgment rendered by C. W. Blair, judge *pro tem.* of said court; but the bill of exceptions was allowed and signed by C. W. Blair, judge *pro tem.* Now, if C. W. Blair was not regularly selected as judge *pro tem.*, or if he had no authority in the case, then he could not allow and sign said bill of exceptions, and the same should be stricken from the record; and if said bill of exceptions were stricken from the record, then the plaintiff in error would not have the shadow of a foundation upon which to allege error. The whole case of the plaintiff in error in this court is founded upon said bill of exceptions.

The judgment of the court below must be affirmed.

All the Justices concurring.