## Evans-Montague Commission Company v. H. B. Spaulding, for use of National Live Stock Bank of Chicago.

1. VERDICT—*power of court to reform.* It is within the power of the trial court so to amend a verdict as to make it conform to the clear and apparent intention of the jury.

2. CHATTEL MORTGAGE—*when title does not pass to mortgagee. with respect to third parties.* The title to mortgaged chattels does not upon default pass absolutely to the mortgagee so far as third parties are concerned, unless the mortgagee takes possession under the mortgage.

Attachment. Appeal from the Circuit Court of St. Clair County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1906. Affirmed. Opinion filed March 15, 1907.

VICTOR KOERNER and B. H. CANBY, for appellant.

WISE & McNULTY, for appellee; PRESTON C. WEST, of counsel.

MR. PRESIDING JUSTICE CREIGHTON, delivered the opinion of the court.

This was a proceeding by attachment, in the Circuit Court of St. Clair county, by the National Live Stock Bank of Chicago, against H. B. Spaulding, in which appellant was summoned as garnishee. Spaulding made default and judgment was entered against him in the sum of $14,543.19. Interrogatories to be answered by appellant as garnishee were duly filed and appellant filed its answer in response thereto. To this answer the plaintiff filed his allegations denying the truthfulness of appellant's answer. The issues were tried by a jury, and the jury returned their verdict in open court, in form as follows: "We, the jury, find a verdict in favor of the plaintiff, the Live Stock Bank of Chicago, and assess the damages at seven thousand two hundred and fifty dollars ($7,250.00)." Appellant moved the court for a new trial. The court denied the motion, and put the verdict returned by the jury in form, so as to make it show the finding to be in favor of the defendant, H. B. Spaulding, for the use of the plaintiff, National Live Stock Bank of Chicago, for the amount of the indebtedness found by the jury as shown by the verdict to be owing from the garnishee, Evans-Montague Commission Company, to the plaintiff, and rendered judgment thereon as follows: "It is therefore ordered and adjudged by the court, that the defendant, H. B. Spaulding, for the use of the National Live Stock Bank of Chicago, have and recover of and from the garnishee, Evans-Montague Commission Company, the sum of seven thousand two hundred and fifty dollars ($7,250.00), the amount of verdict aforesaid, together with his costs in this behalf expended, and that execution issue therefor." The garnishee excepted and brings the case to this court by appeal.

Counsel for appellant contend that the verdict returned

by the jury was not responsive to the issues, and that the court had no power to correct it.

We are of opinion that counsel's contention with respect to the verdict and the power of the court, is not applicable to the issues and evidence in this case. In Law v. Sanitary District, 197 Ill., 523, the court says: "A verdict may be amended by the court or construed by reference to the pleadings and the evidence in the record, and in some instances from the notes of the judge, when the intention of the jury is apparent from the pleadings and the evidence. Courts adhere strictly to the rule that 'where the intention of the jury is manifest, the court will set right matter of form.' 'In considering the verdict itself, with a view to its sufficiency, the first object is to ascertain what the jury intended to find; and this is to be done by construing the verdict liberally, with the sole view of ascertaining the meaning of the jury, and not under the technical rules of construction, which are applicable to pleadings. If the meaning of the jury can be ascertained and a verdict on the point in issue can be made out, the court will mould it into form and make it serve.'" Upon looking into the issues and evidence in this case, the meaning of the jury becomes perfectly apparent, and the trial court did not err in putting it in form.

The remaining questions raised on this appeal are in the main questions of fact. It is true that a number of propositions of law are suggested and insisted upon by counsel for appellant, but they are all based upon their view of what the evidence proves.

The evidence tends to prove that H. B. Spaulding, the defendant in attachment, was engaged on a very extensive scale in the cattle and cattle ranch business in Texas and Indian Territory, and that on November 10, 1902, he conveyed by chattel mortgage 6,171 head of mixed cattle to Strahorn-Hutton-Evans Commission Company to secure the sum of $164,433.76, evidenced by negotiable promissory notes. The notes and mortgage were sold and indorsed to the National Live Stock Bank of Chicago, the plaintiff in attachment. Default was made with respect to payment,

and in November, 1903, an attempt was made to foreclose the mortgage and 3,438 head of cattle were found, taken into possession and sold, and after applying the proceeds to the mortgage indebtedness, a large sum remained unpaid, and 2,933 head of the mortgaged cattle remained neither found nor accounted for.

In October prior to the attempted foreclosure, Spaulding had made two sales of cattle, aggregating 1,214 head, to his nephew and former employee, J. A. Todd, but these sales did not include any of the cattle embraced in the above noted chattel mortgage.

In March, 1905, appellant, the garnishee defendant, was engaged in the live stock commission business, at the National Stock Yards, and had advanced money to J. A. Todd and held a chattel mortgage on Todd's cattle as security therefor. Todd had shipped a number of consignments of cattle to appellant and appellant had sold the cattle and placed the proceeds to Todd's credit.

In the meanwhile, that is, between November 10, 1902, and March, 1905, Spaulding had failed in business and become insolvent, and the National Live Stock Bank of Chicago was keeping up its effort to find the remainder of the cattle embraced in its mortgage, and having received information that certain of the cattle, 210 head, which had been consigned in Todd's name, to appellant, were in fact a part of the cattle embraced in the mortgage and at. the time of such consignment and sale were in fact Spaulding's cattle, subject only to that mortgage, thereupon commenced attachment proceedings against Spaulding and summoned appellant as garnishee, as above noted. Todd appeared in the attachment proceeding and obtained leave to interplead, but he does not join in the appeal and is not in any manner made a party thereto, neither is Spaulding in any manner a party to the appeal, except as nominal plaintiff in the garnishee branch of the proceeding.

Counsel for appellant contend that inasmuch as the chattel mortgage provides for possession in the mortgagee and designates an agent to hold such possession, while posses-

sion was in fact allowed to remain in the mortgagor, that this was a fraud *per se* and not subject to explanation, as to creditors and subsequent purchasers from the mortgagor, Spaulding. However this may be is not very important here, for with respect to the 210 cattle in dispute, the evidence tends to prove and the jury was warranted in finding that they were not included in Todd's purchase from Spaulding, and it is not even claimed that either Todd or appellant were lien creditors of Spaulding.

Counsel further contend that appellant had a lien on the proceeds of the sale of the cattle in question, because of a mortgage from Todd to it. The verdict of the jury excludes the theory that the particular 210 head of cattle in question here were ever owned by Todd, and also, under the evidence, excludes the theory that they went into Todd's possession as a part of either of his purchases from Spaulding. And further, if it be true that Todd gave appellant a mortgage on any cattle, we have no proper proof of its contents. No such mortgage appears in evidence. In this connection counsel suggest that the answer of the garnishee is presumed to be true until such presumption is overcome by evidence, and that in appellant's answer it is stated that "all said cattle, the sales of which have been detailed in answer to interrogatory number ten, were covered by chattel mortgage from the said J. A. Todd to the Evans-Montague Commission Company," appellant. In speaking of these same cattle in its answer to interrogatory number nine, appellant says: "but this garnishee distinctly alleges that these were not the same cattle described in the mortgage mentioned in interrogatory number seven, and were distinctly a separate lot of cattle having no connection whatever with the cattle described in the mortgage dated November 10, 1902," being the mortgage from Spaulding to Strahorn-Hutton-Evans Commission Company under which the beneficiary appellee claims. In addition to the allegation above quoted from appellant's sworn answer, both Todd and Spaulding testified that the cattle sold by Spaulding to Todd were not mortgaged cattle. The evidence, we think, establishes the fact that none

of the cattle that were embraced in the mortgage from Spaulding to Strahorn-Hutton-Evans Commission Company were embraced in the alleged mortgage from Todd to appellant. And we think that the evidence proves that the 210 cattle in question in this case were embraced in the mortgage from Spaulding to Strahorn-Hutton-Evans Commission Company, hence were not "covered by chattel mortgage from said J. A. Todd to the Evans-Montague Commission Company," as stated in appellee's answer.

Counsel for appellee invoke the rule that a garnishing creditor can only recover such indebtedness as could be recovered by an action of debt or assumpsit in the name of the debtor against the garnishee, and contend that Spaulding, the attachment debtor, had no such cause of action against appellant, the garnishee. They say: "The mortgage in question was executed November 10, 1902, and by its terms became due and payable on May 10, 1903. On that date the title to the property mortgaged became absolutely vested in the mortgagee, or its assignee. The condition of the mortgage was broken, and the only thing left in the mortgagor, Spaulding, was the possible equity of redemption. He could have maintained no action at law in his own name to recover the cattle or their proceeds, and his creditors could not by attachment or ganishment acquire any greater rights than he himself had." This rule has no application except as between the parties to the mortgage and their privies, until after the mortgagee had taken possession of the mortgaged property. So long as the mortgagee has not taken such possession, mere strangers and wrongdoers cannot avail of this rule as against the mortgagor. "The mortgagor in lawful possession has the right to protect his possession against third persons by appropriate legal remedies; and even if he is in default but still has possession, he has an interest sufficient to maintain an action against a third party wrongfully converting the property." A. & E. Encyc. of Law, 2d Ed., vol. 5, page 999; Jones on Chattel Mortgages, 4th Ed., sec. 440; Evans vs. St. Paul Harvester Works, 63 Iowa, 204. In this case the court says: "In the case at bar, the position

relied upon by defendant is, that the mortgagor has parted with the legal title, and cannot for that reason maintain an action for the wrongful invasion of his rights. But in our opinion the position is not sound. The mortgagor does not by the execution of the mortgage part with the ownership. If the property is lost or destroyed, though without his fault, he must sustain the loss; and this is true even where the legal title has passed to the mortgagee. The destruction of the property by a trespasser does not pay or cancel the mortgage debt, nor does the sale of it upon execution by a third person. The rule of law by which the legal title is regarded as having passed by the mortgage to the mortgagee, is designed to enable him to take and hold possession for his better protection. It cannot inure to the benefit of third persons wrongfully interfering with the property. When such interference takes place, the wrongdoer must be held liable to those whom he has wronged." To the same effect are: Tallman v. Jones, 13 Kan., 438; Buddington v. Mastbrook, 17 Mo. App., 577; and numerous other cases.

The theory upon which appellee's case is based is, that appellant sold 210 head of cattle owned by Spaulding, the nominal appellee, and collected the money for which they were sold; that this founded a right of action in Spaulding, the right to sue appellant and recover from it the amount of money it received for his cattle; that the beneficial appellee, the National Live Stock Bank of Chicago, being an attaching creditor of Spaulding, had the right to attach this money in the hands of appellant, by garnishment proceedings against it, and to prosecute such proceedings against it in the name of Spaulding, the defendant in attachment, for the use of the National Live Stock Bank of Chicago, the plaintiff in attachment.

The fact that the National Live Stock Bank of Chicago, the attaching creditor, was also a mortgage lien creditor with respect to the cattle, is of only incidental consequence.

We find no material error in this record. The judgment of the Circuit Court is affirmed.

*Affirmed.*