PETER DRAGOVICH, Admr., Appellee, *vs.* THE IROQUOIS IRON COMPANY, Appellant.

*Opinion filed October 27, 1915.*

1. CONSTITUTIONAL LAW—*every presumption must be indulged in favor of constitutionality of law.* Where the constitutionality of a law is involved every presumption must be indulged and every reasonable doubt resolved in favor of its validity.

2. SAME—*a law will not be held unconstitutional unless it is clearly proved so.* A law will not be declared unconstitutional unless it is clearly proved that the requirements of the constitution have not been observed; and this rule applies to the constitutionality of a law when any defect is claimed in its passage.

3. SAME—*constitution does not require that legislative journals shall show affirmatively that a bill was printed.* The constitution does not require that the legislative journals shall show affirmatively that a bill or its amendments have been printed.

4. SAME—*when it will be inferred that the amendments were printed.* Where the journal shows that the amendments to a bill were ordered to be printed and engrossed and that the committee on engrossed bills reported that the amendments were engrossed it will be inferred that the amendments were printed in compliance with the order, if there is nothing in the journal indicating the contrary. (*Neiberger* v. *McCullough,* 253 Ill. 312, and *McAuliffe* v. *O'Connell,* 258 id. 186, explained.)

5. SAME—*Workmen's Compensation act of 1911 is not invalid.* The Workmen's Compensation act of 1911 is not invalid upon the alleged ground that it was not passed in the manner required by the constitution, in that the journals of the legislature did not show affirmatively that the amendments to the bill were printed.

6. WORKMEN'S COMPENSATION—*when injury is one "arising out of and in the course of the employment."* The provision of section 1 of the Workmen's Compensation act of 1911 that compensation may be had for accidental injuries sustained by an employee "arising out of and in the course of his employment," applies to an employee who had momentarily left the duties in which he was engaged to attempt to save the life of a fellow-employee, who, while engaged in his duties, had fallen through a hole in the floor of the shop into a quantity of hot water and was screaming for help.

7. SAME—*when a verdict is not insufficient.* A verdict of the jury in the circuit court on appeal from an award under the Workmen's Compensation act of 1911, which finds the issues "in favor of the petitioner and that he is entitled to compensation," is not insufficient on the ground that it should have fixed the amount of compensation and stated from whom recoverable, where there is only one defendant and the amount of compensation to which the petitioner is entitled is merely a matter of computation under the evidence and the provisions of the act.

DUNN and COOKE, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES H. BOWLES, Judge, presiding.

ALBERT G. MILLER, for appellant.

FRANK A. ROCKHOLD, and CHARLES C. SPENCER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a proceeding to recover compensation, under the Workmen's Compensation act of 1911, for the death of Frank M. Markusic. The case was tried in the circuit court of Cook county on an appeal from a report or award of the board of arbitrators, rendered in accordance with section 10 of said Compensation act. On the trial in the circuit court a judgment for $3500 was entered in favor of appellee, payable in installments, in accordance with the terms of the statute. From that judgment this appeal was taken direct to this court on the ground that said Workmen's Compensation act is unconstitutional.

On a hearing in the circuit court the journals of the house and senate were introduced, and it is argued from them that it does not appear that twenty-three amendments to said bill were printed before the final passage of the bill. The senate journal shows that the bill was introduced, amended and passed. The house journal shows that the bill was received from the senate and having been printed and read the first time was referred to a committee; that the committee afterward reported the bill back with twenty-three amendments, with a recommendation that the amendments be adopted and that the bill as amended do pass. Thereafter the bill was ordered to a second reading, and upon such reading the committee's amendments were offered and adopted. The journal proceeds: "There being no further amendments, the foregoing amendments, numbered 1 to 23, inclusive, were ordered printed and engrossed." The bill was then ordered to a third reading. The committee on enrolled and engrossed bills reported that the house amendments had been correctly engrossed, and later the record shows that the bill was taken up, read at large a third time and passed by a vote of 98 yeas to 2 nays. The senate journal shows that two days later the bill was taken up in the senate, and the question then being, "Shall the senate concur with the house of representatives in the adoption of the following amendments (1 to 23) to the bill?" and the yeas and nays being taken, it was decided in the affirmative by a vote of 35 yeas, nays 1.

Counsel for appellant argues that under the rulings of this court in *Neiberger* v. *McCullough,* 253 Ill. 312, and *McAuliffe* v. *O'Connell,* 258 id. 186, this law, on account of the minutes of the journal, must be held unconstitutional; that it is necessary, in order to hold it constitutional, to find in the journal affirmative evidence that the amendments were actually printed before the final vote. The precise question raised in this case was not considered

or passed upon in either of the cases just cited.   In this case the journal shows that the amendments were ordered printed, while in those cases there was no such entry in the journal.   In *McAuliffe* v. *O'Connell, supra,* we stated (p. 189) : "The journals of both houses fail to show that the amendments proposed by said conference committee were ever printed, or ordered to be printed, in either house," thereby strongly intimating that if the amendments had been ordered printed the act under consideration in that case might have been held constitutional.   In the *Neiberger case, supra,* nothing was said to the contrary.   We have repeatedly held that where the constitutionality of a law is involved every presumption must be indulged and every reasonable doubt resolved in favor of its validity. It is a familiar doctrine of this court that laws will not be declared unconstitutional unless it is clearly proved, beyond a reasonable doubt, that the requirements of the organic law have not been observed.   (*People* v. *Brady*, 262 Ill. 578, and cases cited; *People* v. *Henning Co.* 260 id. 554; *Home Ins. Co.* v. *Swigert*, 104 id. 653.)   This same rule applies to the constitutionality of a law when any defect is claimed in its passage.   In *Larrison* v. *Peoria, Atlanta and Decatur Railroad Co.* 77 Ill. 11, it was held that where a law was signed by the presiding officers of both houses and approved by the Governor, it would be presumed to have been passed in accordance with all the constitutional requirements and to be valid until the presumption was overcome by clear and convincing proof.

The constitution does not require that the legislative journal shall show affirmatively that the bill or its amendments have been printed.   In discussing this question in *Chicago Telephone Co.* v. *Northwestern Telephone Co.* 199 Ill. 324, we said (p. 342) : "Where the constitution does not require a fact to be recorded upon the journal and it can be inferred from the recital in the journal that such fact existed or such step was taken, then the pre-

sumption will be indulged that such fact did exist or such step was taken in order to sustain the validity of the law, where the contrary does not appear from the journal itself. * * * So, here, inasmuch as the record recites that the ordinance was laid over under the rules, and inasmuch as the rules require that it shall be presented and read before it lies over for one week, the presumption will be indulged that the rule was complied with, not only in regard to the presentation of the ordinance but also in regard to the reading of it." This court had this rule in mind in *Neiberger* v. *McCullough, supra,* for in that case, in discussing this very question, we referred to the discussion in the opinion just quoted from and approved this rule as there laid down. The facts here bring this case squarely within that rule. The journal shows that the amendments were ordered printed. Nothing appears on the journal to indicate that the order was not complied with, and it must be presumed, under this rule, that these amendments were actually printed before the final passage of the bill. Not only did the journal show that these amendments were ordered printed, but the rules of both the senate and the house required that all amendments should be printed before being passed. By an unbroken line of decisions this court has held that the presumption must be that a public officer has pursued the course pointed out by law and has performed his duty, until the contrary is shown. (*Ballance* v. *Underhill,* 3 Scam. 453; *Grubb* v. *Crane,* 4 id. 153; *People* v. *Newberry,* 87 Ill. 41; *Long* v. *Linn,* 71 id. 152; *People* v. *Walsh,* 96 id. 232; *Hogue* v. *Corbett,* 156 id. 540; *State* v. *Illinois Central Railroad Co.* 246 id. 188; *People* v. *Cincinnati, Lafayette and Chicago Railway Co.* 256 id. 280.) To hold on this record that this law is unconstitutional would be extending the doctrine of the *Neiberger case* further than it has been extended in that or any other case in this court. Indeed, under the rules laid down by this court in the cases relied

on by appellant, as the journal shows that the amendments were ordered printed, it will be presumed, as nothing is shown to the contrary, that they were printed. The law must therefore be held constitutional.

Counsel for appellant further argues that even though the law be held constitutional appellee could not recover under the Compensation act as the record does not show that he was injured while in the course of his employment by the appellant.' The evidence shows that the deceased, Frank M. Markusic, had been in the employ of appellant, the Iroquois Iron Company, for a number of years, doing different kinds of work about appellant's plant, sometimes in the buildings and sometimes on the dock. On December 24, 1912, he was working in the shop of appellant, assisting in making some safety appliances. Max Gornick, with two or three other men, was working in the same shop repairing steam pipes under the floor, and for this purpose some of the steel plates forming the floor had been taken up, thereby leaving an opening or hole, in which was accumulated a quantity of hot water from which were escaping vapor and steam, making it impossible for a person approaching the opening from where Markusic was working, to see the hole. Gornick, while engaged in this work, slipped and fell into the opening and into the hot water and screamed for help, crying out in Croatian, which was the native language of Markusic: "For good God! pull me out, people! pull me out!" At this cry, the testimony is, Markusic dropped his work and ran toward the place from which the cry came. The steam and vapor coming from the water so obscured the opening that he fell into the hole and was so badly scalded that he died from the effects two days later. Gornick was being assisted out by others just as Markusic fell in. The distance from where deceased was working to the place where the accident occurred is estimated by witnesses to be from 100 to 150 feet. In traveling between the two points he would

have to go about 50 or 75 feet south and then about 50 feet west around a boiler. The place of the accident could not be seen, apparently, from the place where deceased worked.

Section 1 of the act requires that compensation may be had for accidental injuries sustained by any employee "arising out of and in the course of the employment," etc. From the facts already stated, counsel for appellant argues that it was not shown that the accident arose out of and in the course of deceased's employment. This provision of the statute has never been construed by this court but somewhat similar acts have been construed by the courts in other jurisdictions. Under these authorities it is clear that it is the duty of an employer to save the lives of his employees, if possible, when they are in danger while in his employment, and therefore it is the duty of a workman in his employ, when occasion presents itself, to do what he can to save the lives of his fellow-employees when all are at the time working in the line of their employment. Any other rule of law would be not only inhuman but unreasonable and uneconomical, and would, in the end, result in financial loss to employers on account of injuries to their employees. From every point of view it was the duty of the deceased, as a fellow-employee, in the line of his duty to his employer, to attempt to save the life of his fellow-employee under the circumstances here shown. That he failed in his attempt does not in the slightest degree change the legal situation. The reasoning of the following cases tends to support this conclusion: *Rees* v. *Thomas,* 1-4 W. C. C. 9; *Matthews* v. *Bedworth,* 1 id. 124; *London and Edinburgh Shipping Co.* v. *Brown,* 42 Scottish L. R. 357.

Counsel insists that there is no proof in the record that Gornick, the man who first fell into the hot water, was working in the line of his employment at the time of the accident. The burden of furnishing evidence from which the inference can be legitimately drawn that the death

of the employee was caused by an accident "arising out of and in the course of the employment" rested upon the claimant. (*Bryant* v. *Fissell,* 86 Atl. Rep. [N. J.] 458.) We think the evidence clearly shows that Gornick was at work in the line of his employment at the time he fell into the opening, and that on principle and authority, under the circumstances shown here, it must be held that the deceased, Markusic, was working in the line of his employment, under this statute, at the time he was injured.

Counsel for appellant further insists that the verdict of the jury was not sufficient to sustain this judgment. The verdict read: "We, the jury, find the issues in favor of the petitioner and that he is entitled to recover compensation." Counsel argues that the jury should have found the amount of compensation and from whom the administrator was entitled to recover. With this we do not agree. It is quite customary for verdicts, even in common law cases, to recite, "We, the jury, find the issues in favor of the plaintiff," etc., without stating that the recovery shall be against the defendant. We see no reason why it was necessary in this case for the jury to state against whom the verdict was rendered. There was only one defendant, and if the petitioner was to receive compensation at all it must be from the defendant. Section 4 of this statute provides that if the employee leaves a widow, child or children to whose support he had contributed within five years previous to his death, the compensation shall be "a sum equal to four times the average annual earnings of the employee," but not less, in any event, than $3500. (Hurd's Stat. 1911, p. 1138.) The proof showed, without contradiction, that the deceased left a widow and minor child. It was stipulated during the trial that the average weekly wages of the deceased for more than a year prior to his death were $19.25 and that he had contributed to the support of his wife and children within five years preceding his death. The act provides that the matters shall be first submitted

to arbitration, as was done in this case, and further provides, in section 10, that either party to such arbitration shall have the right to appeal from such report or award to the circuit court, as was done in this case, and "upon such appeal the questions in dispute shall be heard *de novo,*" etc. There was no question in dispute as to the amount of the annual earnings of the deceased. From the record it is manifest that the amount that should be recovered was not in any way in dispute before the jury. The chief, if not the only, question in dispute was whether or not the administrator was entitled to recover anything for the death of the deceased. The stipulation fixed the annual weekly earnings, the verdict found the petitioner entitled to compensation and the statute fixed the method, therefore the determination of the amount was a mere mathematical operation, which was performed by the court in entering the judgment. Even in a common law action a verdict will not be reversed for mere informalities where they do not affect the merits of the case and justice has been done. (*Bates* v. *Williams,* 43 Ill. 494; *Bacon* v. *Schepflin,* 185 id. 122.) In *Hall* v. *First Nat. Bank,* 133 Ill. 234, in discussing a question somewhat similar, in principle, to that here, the court said (p. 243): "The form of the verdict was, 'We, the jury, find the issues for the plaintiff,' no damages being assessed by them. The reason for this appears to be that the defendants had suffered judgment to go against them by default, and the court thereupon assessed the damages and rendered final judgment. On a motion by the defendants to set aside the default and for leave to plead, that court stayed proceedings on the judgment and allowed the defendants to plead, but refused to set aside the judgment, allowing it to stand as a security for the plaintiff until the trial of the issue presented by the pleas. If the defendants failed to establish their defense, judgment was to stand. Under such circumstances the verdict of the jury was not erroneous in form or substance,

as the question of damages was not submitted to them." That case, on this point, was quoted with approval in *Dulle* v. *Lally,* 167 Ill. 485. The reasoning in those cases fully supports the conclusion that this verdict, on the facts found in this record, was sufficient to support the judgment. It might have been proper to have made the verdict more specific, but the informalities in no way affect the merits of the case.

We find no reversible error in the record. The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

DUNN and COOKE, JJ., dissenting:

We dissent from the conclusion reached by the majority of the court. The record of the two houses fails to show that the twenty-three house amendments were printed before the vote was taken on the final passage of the bill. Testimony of members of the senate and house was offered and heard over appellant's objection, that the amendments were printed and on the desks of members before the final vote was taken on the bill. This testimony was incompetent. "The parliamentary history of an act or bill in the legislative journals is the only evidence that is recognized by the courts in this State, and the journals cannot be aided or contradicted by other documents or evidence of any kind." *People* v. *Brady,* 262 Ill. 578.

The failure of the legislative journals to show that the bill and all amendments thereto were printed before the vote upon the final passage of the bill renders a supposed enactment void. (*Neiberger* v. *McCullough,* 253 Ill. 312; *McAuliffe* v. *O'Connell,* 258 id. 186.) To sustain this act it is therefore necessary to find in the journals the evidence that the bill was printed before the final vote. The evidence is not there. The house journal shows that the amendments were ordered printed and engrossed and were afterward reported to have been correctly engrossed, but that is all. The senate journal as to these amendments

shows only that the senate concurred in them. There is no statement in either journal from which it can be inferred that they were printed in either house.

It is argued that every presumption must be indulged in favor of an enrolled act; that such presumption can be overcome only by the clearest evidence, and that evidence is admissible to cure mistakes or clerical errors in the keeping of legislative records. In *People* v. *Bowman,* 247 Ill. 276, we held, as had been held before, that the silence of the journals as to anything required to be shown is evidence of its non-existence, and in *Neiberger* v. *McCullough, supra,* that the printing of the bill and amendments before the final vote is a thing required to be shown by the journal. Therefore the failure of the journal to show that the amendments were printed is evidence that they were not printed.

Reference is made to the rules of the two houses as shown by the journal, the presumption of the regularity of the proceedings and the presumption that officers have done their duty. These presumptions have nothing to do with the case in hand. The constitution requires the printing of the bill and amendments, and we have held that this fact must appear from the journals of the two houses. The rules of the houses are no more binding than the requirements of the constitution, and there is no stronger presumption that they have been observed. No presumption of a compliance with this requirement will be indulged from anything which does not appear in the journals themselves. If they do not show that the bill was printed it will not be presumed that it was printed, even though the rules of the two houses required it as well as the provision of the constitution. In *Neiberger* v. *McCullough, supra,* we said, referring to the journals of the two houses of the legislature (p. 316): "The courts have not gone so far as to presume that things were done which cannot be inferred from the record to have been done." In that

case the court refused to infer from the certificates of the presiding officers of the senate and house, with the approval of the Governor, that the bill with all its amendments was printed though the constitution required that all amendments should be printed before the bill was put upon its final passage.

It is sought to be inferred that the amendments were printed because they were ordered to be printed and nothing appears on the journal to indicate that the order was not complied with, and because it must be presumed that the amendments were actually printed before the final passage of the bill for the reason that where the constitution does not require a fact to be recorded upon the journal and it can be inferred from the recital in the journal that such fact existed or such step was taken, then the presumption will be indulged that such fact did exist or such step was taken in order to sustain the validity of the law when the contrary does not appear from the journal itself. The only recital in the record from which it is sought to infer that the amendments were printed is the recital that they were ordered printed, and it is urged, as if it gave strength to the inference, that the rules of both the senate and the house required that all amendments should be printed before being passed. Rules, however, are sometimes disregarded and orders are sometimes not complied with, and it is by the record, only, that compliance with the rule and the order can be shown. If the presumption from the silence of the record is that the rule and the order were complied with then the amendments are to be regarded as having been printed, but the *Neiberger case* cited many authorities supposed to lay down the rule the other way and followed those authorities. If it could not be presumed that public officers have pursued the course pointed out by law and performed their duty in observing a constitutional requirement, the logic is not apparent of presuming that the same public officers have pursued the

course pointed out by law and performed their duty in observing a mere rule of the two houses of the legislature containing the constitutional requirement. Why so much greater strength of presumption in favor of a rule prescribed by the legislature than of a rule prescribed by the constitution? The *Neiberger case* either decided that the constitution required that the fact that all amendments to a bill were printed before it was placed upon its final passage should be recorded upon the journal, or it did not so decide. If it did not so decide and there is no such requirement, there is an end of the matter and courts and lawyers have merely been mistaken as to the decision. If it did so decide, then there is no room for presumptions as to regularity of proceedings and officers doing their duty. It is then to be determined from a reading of the record whether or not it states the amendments were printed, and, of course, there is no room for a difference of opinion as to that. In the *Neiberger case* it is said that the express provision of the constitution for the entry of the ayes and noes on the final passage of the bill carries with it not the slightest implication that other matters need not be entered, and the necessary result of the opinion is that the printing of the bill, and of all amendments thereto, before the bill is placed upon its final passage must also be entered in the journal. The court refused to presume such printing from the requirement of the constitution. In this case there is nothing additional except the requirement of the rule of the senate and house and the order to print. These requirements are no more binding than those of the constitution, and their mere existence, which is all that is shown, raises no presumption that they were complied with. The *Neiberger case* decided that the journals must show that the bill and all amendments were printed before the final vote was taken. This rule is abrogated by the decision now made and the questions left to be determined by presumption.