The People *ex rel.* J. M. Mosby, Appellee, *vs.* Lewis G. Stevenson *et al.* Appellants.

*Opinion filed February 16, 1916.*

1. Civil service—*section 12 of the Civil Service act excludes common laborers.* Section 12 of the State Civil Service act excludes common laborers in the employ of the different departments of the State from the general class of employees under civil service who can be dismissed only upon proof of the charges filed and after an opportunity has been given to refute such charges.

2. Same—*when janitor is in classified service and not a common laborer.* Under the State Civil Service act, considered in connection with the Appropriation act of 1913, a janitor whose pay is provided for in such act is an employee in the classified service and not a common laborer.

3. Same—*tender of performance by one unlawfully discharged supplies want of actual performance.* One unlawfully discharged will be considered as holding his position, and if he performs his duties he will be entitled to his salary until lawfully discharged, and if not permitted to perform his duties a tender of performance will supply the want of actual performance.

4. Same—*how employee under civil service may be discharged.* The Civil Service Commission, alone, may discharge an employee under the classified civil service, and then only for cause shown by investigation upon its own motion or upon written charges and after opportunity given the employee to be heard in his defense.

5. Mandamus—*mandamus is proper to compel issuance of warrant to pay claim properly due.* The issuance, signing or countersigning of a warrant upon the proper fund may be compelled by *mandamus* where it clearly appears that the claim is properly due and payable.

Appeal from the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding.

P. J. Lucey, Attorney General, and George P. Ramsey, for appellants.

Patton & Patton, (Benj. F. Clanton, of counsel,) for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellee, J. M. Mosby, filed his petition for *mandamus* in the circuit court of Sangamon county October 20, 1914, against the Secretary of State, the Civil Service Commission, the State Treasurer and the State Auditor of Public Accounts, praying that the Secretary of State and the Civil Service Commission be commanded by a writ of *mandamus* to certify and approve a pay-roll for his back salary from August 1, 1913, to April 21, 1914, at the rate of $800 per year, for doing janitor work in the men's lavatory on the first floor of the capitol building, and that upon such certification the Auditor of Public Accounts be commanded to issue, and the State Treasurer to pay, such warrant to the relator.

The petition alleged that for nine years immediately preceding August 1, 1913, the relator was employed by the State of Illinois as janitor under the classified civil service and that he performed his services in a satisfactory manner; that on July 15, 1913, Harry Woods, then Secretary of State, demanded his resignation; that he refused to resign but continued in his employment until August 1, 1913, though interfered with by agents of the Secretary of State; that on August 1, 1913, relator, on coming to work, was asked for his keys and informed that he was discharged; that relator refused to surrender his keys but immediately complained to the Civil Service Commission, which told him it could take no action as no charges had been filed against him and as it had not his resignation. Relator alleges that from August 1, 1913, to March 1, 1914, his name remained on the civil service roster as an employee, and that he presented himself during all of such time ready and willing to perform his duties. The petition alleges that in January, 1914, he filed a petition with the commission alleging that he was being illegally interfered with in the perform-

ance of his duties and asking that such interference be restrained; that a hearing was had on such petition February 17, 1914, and on March 3, 1914, a finding was made that relator had not resigned, that he was discharged without cause, and that the allegations of the petition that relator was being illegally interfered with were true. It was further found that it appeared from the evidence relator was loaning money at usurious rates of interest, and the Secretary of State was ordered to file charges against him and a hearing was set for March 18, 1914, and that on April 21, 1914, relator was discharged by the commission and quit the service of the State. The petition claims relator is entitled to his salary from the date of his illegal discharge, August 1, 1913, to April 21, 1914, when he was legally dismissed by the commission, at the rate of $800 per year.

Respondents, on October 31, 1914, demurred both generally and specially to the petition. July 7, 1915, the demurrer was overruled, and respondents electing to stand by their demurrer, judgment was entered commanding the Secretary of State and the Civil Service Commission to certify the pay-roll of relator from September 1, 1913, to April 21, 1914, at the rate of $800 per year, and commanding the Auditor of Public Accounts to issue a warrant for such salary and the State Treasurer to pay the same to relator. Respondents have appealed, and no cross-error being assigned, the one question for review is the sufficiency of the petition.

Appellants insists (1) it does not appear from the petition relator was a janitor but from the nature of his work described he was a laborer, who under the provisions of the Civil Service act could be summarily discharged without charges being filed with the commission and proved; (2) that there is no provision of the statute authorizing the back pay of employees under civil service, discharged as was relator; (3) that the suit is, in effect, a plain suit for

damages against the State, which is prohibited by section 26 of article 4 of the constitution.

Section 12 of chapter 24*a* of Hurd's Statutes of 1913, known as the Civil Service act, is as follows: "No officer or employee in the classified civil service shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before said Civil Service Commission, or by or before some officer or board appointed by said commission to conduct such investigation. The finding and decision of such commission or of such investigating officer or board, when approved by said commission, shall be certified to the appointing officer, and shall be forthwith enforced by such officer. Nothing in this act shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days. Every such suspension shall be without pay: *Provided, however,* that the commission shall have authority to investigate every such suspension, and in case of its disapproval thereof, it shall have power to restore pay to the employee so suspended. * * * Nothing in this section shall be construed to require such charges in case of laborers," etc.

This section excludes common laborers in the employ of the different departments of the State from the general class of employees under civil service, who can only be discharged upon the proof of charges filed and after an opportunity has been given to refute such charges. The petition recites petitioner's duties consisted in performing janitor work; that upon his return to work August 1, 1913, he found another janitor performing his duties, and that he was asked, but refused, to surrender his keys. The finding of the commission on March 3, 1914, set out in the petition, that the investigation was concerning the circumstances attending the removal of relator "from the position of janitor," and its recommendation that the Secretary of State prefer charges against relator, would have been unnecessary

had it deemed him a laborer. The petition also alleges that relator's salary "in his said employment was eight hundred ($800) dollars per annum, payable monthly." While the word "laborer," as commonly used, is perhaps broad enough to include janitors or those doing janitor work, yet in the more restricted use of the words these terms are not confusing, and upon a reading of the entire Civil Service act and the Appropriation act for the year 1913 the distinction clearly appears. The Appropriation act provided for the pay of ten janitors at $800 per year. The petition clearly and sufficiently alleges that relator is, or was, a janitor, and as such he held a position under the civil service different from that of a laborer, as that term is used in such act.

Under the provisions of the section of the statute above set out, the department head or appointing power is given power to suspend a subordinate for a reasonable period, not to exceed thirty days. While there was no attempted suspension of relator, the attempted discharge of him by the Secretary of State on August 1, 1913, was treated or considered by the trial court as a constructive suspension for thirty days and no allowance of salary for such period was made. Relator has assigned no cross-error as to this part of the finding. Relator was legally holding the position of janitor August 1, 1913, and so long as he was holding such position he was entitled to the salary of the same if he performed the duties of such employment or his failure to perform the same was due to the causes alleged. The tender of performance by relator supplied the want of actual performance. (*United States* v. *Wickersham,* 201 U. S. 390.) This court has recently held in *People* v. *Stevenson,* 270 Ill. 569, that employees holding positions later placed under the classified civil service cannot be subsequently required to take civil service examinations for the positions they may then occupy and be discharged or dismissed upon their refusal to take the same. It was further held in that case, which was an action of *mandamus* to compel re-instatement

to the position from which the petitioner had been illegally removed, that she was also entitled to her salary in arrears. In that case, and in *People* v. *Brady,* 262 Ill. 578, the relators were restored to their positions as well as granted back pay. Under the Civil Service act there are but two ways by which the commission may obtain jurisdiction of the question whether an employee should be discharged, one being an investigation upon its own motion and the other upon charges filed with the commission. The commission, alone, may discharge an employee under the classified civil service, and then only for cause, upon written charges and after an opportunity to be heard in his own defense is given the party. Here the then Secretary of State sought by intimidation to secure relator's resignation, and upon failing to receive the same attempted to discharge him summarily and without complying with the statute or following the manner there pointed out. Upon being interfered with in the discharge of his duties relator immediately appealed to the commission, asking that the interference cease. This was the proper thing for him to do, and the commission, upon investigating his claim that he was being illegally interfered with, found such to be the fact. It then ordered the Secretary of State to file charges against the relator, which he did, charging relator with loaning money at usurious rates of interest, and upon a hearing this charge was found true and relator legally discharged April 21, 1914. Until such discharge he was an employee of the State as janitor under the classified civil service and as such presented himself for work. He is entitled to the salary ordered paid him by the circuit court of Sangamon county.

The contention that this suit is, in effect, an action against the State for the recovery of damages and that *mandamus* will not lie cannot be sustained. The fact that no re-instatement to office was asked does not distinguish the right to maintain the action in this case from *People* v. *Brady, supra,* and *People* v. *Stevenson, supra. Mandamus*

was held the proper action to compel the issue of a warrant in payment for stationery sold the State in *People* v. *Secretary of State*, 58 Ill. 90, to pay interest on bonds in *People* v. *Smith*, 43 Ill. 219, and to control the issuance of warrants for the pay of members of the legislature in *People* v. *Hatch*, 33 Ill. 9. "The issuance, signing or countersigning of a warrant upon the proper fund may be compelled by *mandamus* where the claim has been duly liquidated, audited and allowed or where it clearly appears that the claim is properly due and payable." (19 Am. & Eng. Ency. of Law, 786.)

The judgment of the circuit court is affirmed.

*Judgment affirmed.*