JOHN A. WOOD, Plaintiff in Error, *v.* ISRAEL BLANCHARD, Defendant in Error.

### ERROR TO JACKSON.

When the legislative will can be ascertained, from different enactments, they should be so construed as to make that will effective, although no express language. is used, which declares such legislative will.

The law-making power may continue or create an office, without an express declaration that such office shall be continued or created, if the intention to do so is manifested by requiring official acts to be performed by such officer, or if provision is made by filling vacancies in such office.

THIS was an action of trespass *vi et armis*, by Blanchard against Wood. Wood pleaded specially, that he was acting as coroner, and made the levy complained of by virtue of his office, and by virtue of an execution placed in his hands as such coroner. To this plea there was a demurrer, which was sustained in the court below, on the ground that there was no such officer as coroner known to the constitution and laws of the State of Illinois.

A. M. JENKINS, for Plaintiff in Error.

J. DOUGHERTY, W. J. ALLEN and J. A. LOGAN, for Defendant in Error.

CATON, C. J. Have we a coroner now ? This is the only question presented by this record. The old constitution created the office of coroner, the mode of whose election and whose duties were prescribed by subsequent acts of the legislature. The old constitution was superseded and practically repealed by the new, which omitted to create the office of coroner. It is not denied that the legislature, under the new constitution, has the power to create the office ; but as that has not been done in express terms, it is insisted that there has been no such officer since the adoption of the new constitution.

This argument is at least specious, but we think that a closer examination of the subject will show that it is not sound. So far as the facts assumed in this argument are concerned, they are true, but there are other facts which it overlooks, and which are important to be considered in the determination of this question.

It is not necessary in all cases that the legislature should, in explicit and affirmative terms, declare its will, in order to make that will the law. Where the legislative will is clearly and

Wood *v.* Blanchard.

manifestly indicated, by its enactments, such intention may be held to be the law, though the legislature should, through inadvertence, have failed in explicit and affirmative terms to declare such intention. True, we must look to the language it has used, in order to ascertain its will, but if, from what it has said in the form of enactments, we can unmistakably ascertain its intention, it becomes the duty of the courts to declare and enforce such intention.

If there be such an office as coroner in this State, it must depend for its existence upon legislative enactments; either those adopted by the constitution, or since passed, or upon constitutional inference; for, as before remarked, it is not expressly created by the constitution. The election law, and the law concerning sheriffs and coroners, of 1845, provide for the election of coroners, and prescribe their duties. Although the old constitution created the office, these laws would be ample, without its aid, to do so; but it is not to be denied, that they were passed with a view to fill the office already created, rather than creating it. Still, as the new constitution expressly continued in force all previous laws, not inconsistent with it, it has certainly continued these former laws in force. The legislature had the right to enact precisely such laws as these, under the new constitution, and had this been done, it would thereby have created the office of coroner and prescribed his duties beyond all question. I then ask confidently, whether the convention did not do the same thing, by continuing these old laws in force? Suppose the schedule to the constitution had declared, in express terms, that the laws then in force, providing for the election of coroners and prescribing their duties, should continue in force till repealed or altered by the legislature. Who could truthfully deny that it was the intention of the convention that the office of coroner should continue to exist? So that I think I may truly say that if the legislature, in passing those laws, did not intend to create the office of coroner, the convention, by continuing them in force, did intend to continue that office in existence, subject to the control of the legislature. The language of the first section of the schedule of the new constitution is this: "That all laws in force at the adoption of this constitution, not inconsistent herewith," "shall continue and be as valid as if this constitution had not been adopted." Now when we admit that the legislature might, under the new constitution, have enacted just such laws as those referred to, we admit that those laws are not inconsistent with the constitution, for the legislature could pass no laws inconsistent with it. If then they are not inconsistent with it, they are declared to be as valid as if the constitution had not been adopted. All

the laws thus continued in force are, strictly speaking, reënactments by the convention, and we therefore look to that for their validity. We repeat, therefore, that we are warranted in saying that the office of coroner was continued by the adoption of the new constitution.

But this is not all. We have further, and, if need be, still more direct proof that the office of coroner should still continue after the adoption of the new constitution. The fourteenth section of the schedule is as follows: " That if this constitution shall be ratified by the people, the governor shall forthwith, after having ascertained the fact, issue writs of election to the sheriffs of the several counties of this State ; or, in case of vacancy, *to the coroners*, for the election of all the officers whose election is fixed by this constitution or schedule ; and it shall be the duty of said sheriffs *or coroners* to give at least twenty days' notice of the time and place of said election, in the manner now prescribed by law." Now here the convention itself recognizes the existence of the office of coroner after the old constitution should be superseded by the new, for it requires of them official acts after it should be ratified by the people and when in full and complete operation. We should subject the convention to the charge of a very strange absurdity indeed, if we say it intended to abolish the office of coroner absolutely, and that all the coroners in the State should cease to be officers the moment the new constitution took effect, while it still required them to perform official acts after that time. In the face of these provisions it is not to be denied that it was the affirmative will and positive intention of the convention in framing this constitution, and of the people in adopting it, that the office of coroner should continue to exist, and that all the coroners then in office should continue after the adoption of the new constitution. If the office continued for a single moment after the adoption of the new constitution, it still continues, unless it has since been abolished by competent authority. If they were coroners so as to give notice of the election under the new constitution, as required by that instrument, when since then has the office been abrogated ? Suppose the governor had listened to this specious argument, that the new constitution had abolished the office of coroner, and had refused to send writs of election to coroners in counties where the office of sheriff was vacant, substantially telling the convention and the people that they did not know what they were about when they ordered him to do so, and that they had, unwittingly, no doubt, left every county in the State without a coroner, or any other officer to take his place, would he not justly have been charged with captiousness ? And now we are, in fact, asked to do substantially the same thing.

But the legislature, subsequent to the adoption of the new constitution, has not been entirely silent on this subject. At the second session of the first legislature convened under this new constitution, an act was passed which provided " that whenever a vacancy shall happen in the office of sheriff, county surveyor, *or coroner*, of any county in this State," the clerk should give notice to the governor, who should issue writs of election, etc. Now here the legislature, without deeming it necessary to create the office of coroner, recognize it as already existing, and provide for filling vacancies which may occur in it.

It may be said with truth, that in none of the provisions of the constitution, or the statutes to which I have referred, is the office expressly created, as it was in the old constitution, and I presume that no such provision exists, but there is an implication from the language used in both, so pregnant as to leave no doubt on the mind of any one, that it was the deliberate and affirmative will of the competent law-making powers that the old office of coroner should continue after the adoption of the new constitution as it before existed, that it acquires the force of a positive enactment to that effect. When the constitution requires that the coroner shall do certain official acts at a particular time, it in effect declares that there shall be an office at that time, which may be filled by such an officer. When the legislature provided for the election of coroners to fill vacancies in that office, it manifested an indisputable intention that there should be such an office which might become vacant, which, if we exercise our common understanding, we can no more ignore than we could an express provision to that effect. It is the object of construction to find out the real intention of the writer, from the language used ; and in construing statutes we study their language and carefully consider every word, discarding none as useless, if possible, in order to find out the true meaning or will of the law-giver, and when that is ascertained we know what the law is, and must so declare it. Now, unless we hold there is such an office as coroner, then we must declare that all the constitution says, and all the statute says, about that office, is mere idle verbiage, without purpose or meaning. We are not prepared to reject all this as meaningless, but are of opinion that the provisions referred to were inserted for a purpose, which it is the duty of the court to effectuate.

As a case most directly in point, and a stronger one than this, where this court gave effect to the manifest will of the legislature in the absence of any positive enactment declaring such will, but where it had to be gathered from various statutes, I refer to that of *The People* v. *Thurber*, 13 Ill. R. 554. There no express provision could be found, either in the constitution

4

or the statute, declaring who should be the successor to the clerk of the County Commissioners' Court, which was abolished by the new constitution. The laws had imposed a great variety of *ex officio* duties upon that officer, in no way connected with the business of the court of which he was clerk, but which the very continuance of the government required should be performed by some one, and no law could be found declaring who should perform those duties after that office was abolished. After examining a great variety of acts, it became so apparent that the legislature supposed and intended and so willed that the clerk of the new County Court should in all *things* succeed to the duties of the clerk of the County Commissioners' Court, that we did not hesitate to declare that such was the law. To have declared otherwise, would have defeated the clear will and intention of the legislature.

So here ; should we now declare that there is no such office as coroner, we should, beyond all doubt or controversy, defeat the obvious and manifest will and intention of both the convention and the legislature, which is clearly manifested by the laws which they and the people by their vote have enacted. This, as we understand our duty, we ought not to do.

I freely confess I am glad that we find ourselves fully authorized to hold that the office of coroner still continues ; for to hold that there has been no such officer in this State for the last nine years, and that all which has been done by those who were supposed to be coroners was utterly void, would involve the whole community in calamities which it would be impossible now to estimate.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*