The People of the State of Illinois ex rel. Jacob L. Jacobs, Appellee, v. City of Chicago et al., Appellants.

Gen. No. 22,398.

1. Civil service—*what is status of commission of Chicago.* The Civil Service Commission of Chicago is not an independent corporate body but is one of the departments or bureaus of such city.

2. Civil service, § 2*—*whom applicable to.* Employees of the Civil Service Commission are employees of the city, and come under the provisions of the Civil Service Act, sec. 3 (J. & A. ¶ 1801), which therefore requires their classification as provided by the section.

3. Civil service, § 10*—*what commissioners may not do.* The Civil Service Commissioners have no power either to create or abolish an office.

4. Civil service, § 1*—*when appropriation of salary not affected by act.* Nothing in the Civil Service Act (J. & A. ¶ 1799 *et seq.*) prohibits a city council from creating an office and assigning it to any department of the municipality deemed by the council to be desirable, and when such an office is legally created and assigned to the commission, an appropriation for the salary thereof is not affected by section 18 of the Act (J. & A. ¶ 1817), limiting the expenses of the commission for clerk hire, etc., to $5,000 a year, the latter provision

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

being intended to limit the commissioners in the expenses which they might incur, and not to limit the city council in its appropriation.

5. OFFICERS, § 2*—*what does not prohibit creation of office.* The failure of a provision for the salary of an office does not necessarily prohibit the creation of the office.

6. CIVIL SERVICE, § 1*—*how appropriation of salary affected by amendment to act.* While the amendment of the Civil Service Act, sec. 18 (J. & A. ¶ 1817), providing that the civil service commissioners may "incur expenses not exceeding the amount appropriated therefor by the city council," does not affect the creation of an office assigned by the council to that department, it does operate to remove any question of the legality of the salary of such office for which the council has appropriated.

7. CIVIL SERVICE, § 27*—*when petition for reinstatement sufficient.* In a petition for a writ of mandamus to compel the reinstatement of relator in a public office, averments setting out the ordinances and orders relied on *in haec verba, held* to aver sufficient material facts to make out a case for petitioner and not to aver conclusions, although some averments were subject to question.

8. MUNICIPAL CORPORATIONS, § 85*—*when language of ordinance creating office sufficient.* It is not necessary that the city council in creating an office shall declare in express words that such office is created, it being sufficient if any language is used showing the intent to create the office.

9. MUNICIPAL CORPORATIONS, § 85*—*when ordinance shows intent to create office.* In a petition for a writ of mandamus to compel the reinstatement of relator in a public office, ordinances set out in the petition *in haec verba,* relied on as creating the office in which relator .sought reinstatement, construed and *held* to show an intent to create such office.

10. MUNICIPAL CORPORATIONS, § 85*—*when office created by implication.* Express language in an ordinance creating the title to an office by implication creates the office itself.

11. CIVIL SERVICE, § 27*—*when petition for reinstatement sufficiently alleges creation of office.* A petition for a writ of mandamus to compel the reinstatement of relator in a public office sufficiently alleges the creation of the office in which relator seeks reinstatement where it sets out *in haec verba* ordinances which show an intention to create such office..

12. MANDAMUS, § 27*—*when petition for reinstatement in office not demurrable.* A petition for a writ of mandamus to compel the reinstatement of relator in a public office is not obnoxious to general demurrer in that it seeks two different kinds of relief.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

13. MANDAMUS, § 190*—*when erroneous award of costs against municipality corrected on appeal.* On a petition for a writ of mandamus to compel the reinstatement of relator in a public office, it is error to award an execution against the municipality for costs, and such error will be corrected by an order in the Appellate Court directing the trial court to amend its records in this respect.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the March term, 1916. Affirmed. Opinion filed November 27, 1916. Rehearing denied December 11, 1916.

SAMUEL A. ETTELSON, for appellants; ROY S. GASKILL, of counsel.

FRANCIS X. BUSCH, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

The relator, Jacob L. Jacobs, sought by petition for mandamus to be restored to the position or office of "Expert on System and Organization" with the Civil Service Commission, and to be paid back salary. To his petition a general demurrer was filed which the court ordered overruled. Respondents electing to stand by their demurrer, a writ of mandamus was awarded as prayed. A reversal of this order is sought by this appeal.

The petition alleges the adoption of the Civil Service Act by the City of Chicago and the appointment of civil service commissioners; that on January 2, 1912, the city council of Chicago passed an ordinance creating the position of "Expert on System and Organization," and the ordinance is set forth *in haec verba;* that subsequently ordinances were passed appropriating a salary for this position; that on May 14, 1912, this position was duly classified by the civil service commissioners as an office or place of employment in

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the classified civil service of the City of Chicago; that an examination was had for this position which the relator took, and upon his markings stood second on the promotional eligible list; that afterwards, on July 15, 1912, in compliance with the Civil Service Law, relator was appointed to this position and accepted the same and entered upon the performance of the duties of that position from that date until May 8, 1915; that on July 15, 1912, an ordinance was passed providing for advancement and increases of salaries within civil service grades, and this ordinance is also set forth *in haec verba;* that in accordance with this last ordinance the salary of relator was increased from $250 per month to $291.66⅔ per month. The petition further avers that on May 8, 1915, there was unpaid and unexpended in said appropriation for the position of Expert on System and Organization the sum of $2,333.33; that this position is not one of those exempted from the operation of the Civil Service Law by the terms of section 11 of said law (J. & A. ¶ 1810). Petitioner avers that he discharged the duties of said position honestly and efficiently, and that on May 7, 1915, the commissioners sent to him the following communication:

"By direction of the commission, you are hereby suspended from duty pending an investigation of your conduct and actions. This order becomes effective at the close of official business Saturday, May 8, 1915.

(Signed)    A. M. SWANSON, Secretary.

The petition further alleges that during the period of thirty days thereafter there was no investigation of the conduct and actions of relator by the civil service commissioners or any one acting on their behalf; that on June 8th he reported to the office of the civil service commissioners and asked to be allowed to perform the duties of the position of Expert on System and Organization, and was informed by the commissioners that certain orders had been entered in the

The People v. City of Chicago, 202 Ill. App. 105.

minutes of said civil service commissioners of date June 5, 1915, as follows:

"Whereas the commission did on May 5, 1915, enter an order (7449 K) suspending Jacob L. Jacobs, Expert on System and Organization, salary $291.66⅔ per month, pending investigation.

"And whereas the period of suspension of the said Jacob L. Jacobs expires by operation of law on June 7, 1915.

"It is therefore ordered that Jacob L. Jacobs be restored to duty.

"And it is further ordered that he be laid off as of June 8, 1915, on account of lack of funds.

"And it is further ordered that his name be returned to the eligible register from whence it came and that no salary be allowed the said Jacob L. Jacobs during the thirty day period of suspension, nor during any period of time his name remains upon the eligible register awaiting reinstatement.

"And it is further ordered that the position of Expert on System and Organization, salary 291.66⅔ per month, be and the same is hereby abolished."

Petitioner further alleges that on June 7th the civil service commissioners mailed a communication to him which is as follows:

"DEAR SIR:

"On Saturday, June 5, 1915, the Commission entered the following order on its minutes:

"Whereas the Commission did on May 5, 1915, enter an order (7449 K) suspending Jacob L. Jacobs, Expert on System and Organization, salary $291.66⅔ per month, pending further investigation.

"And whereas said investigation is in progress and incomplete.

"And whereas the period of suspension of the said Jacob L. Jacobs expires by operation of law on June 7, 1915.

"It is therefore ordered that Jacob L. Jacobs be restored to duty.

"And it is further ordered that he be laid off as of June 8, 1915, on account of lack of funds.

"And it is further ordered that his name be returned to the eligible register from whence it came and that no salary be allowed the said Jacob L. Jacobs during the thirty day period of suspension nor during any period of time his name remains upon the eligible register awaiting reinstatement.

"And it is further ordered that the position of Expert on System and Organization, salary $291.66⅔ per month, be and the same is hereby abolished.

"Accordingly you are hereby notified of the expiration of your period of suspension, your restoration to duty and lay off. Attached hereto is a copy of an opinion rendered by the commission in connection with the entering of this order."

Petitioner further alleges that his suspension by the commissioners was not in good faith and was not for the purpose of investigating the conduct and actions of petitioner but was a pretext and an attempt to deprive him of his position in order that the commissioners might fill the same with some other person, contrary to the terms and provisions of the Civil Service Law; that on June 5, 1915, there was not a lack of funds with which to pay the salary of this position, but on the contrary there was $2,333.33 that had been appropriated for the salary, which was then and still is unexpended and in the city treasury of Chicago; that the position of Expert on System and Organization has existed ever since June 5, 1915, and still exists; that the commissioners refused and still do refuse to allow petitioner to perform the duties of said office, although petitioner has been willing to perform the same; that afterwards the commissioners designated one E. H. Davenport to perform the duties of the same, and that the commissioners are attempting to pay him for performing the duties of said position out of the treasury of the City of Chicago, and particularly from the fund originally appropriated by the city council to pay the salary of petitioner. It is charged that the said Davenport performs said duties

illegally and in violation of the terms of the Civil Service Law; that no charges of any kind have ever been preferred against the petitioner and he has never been removed from his position; that the city treasurer and comptroller refuse to pay him his salary.

The prayer of the petition is that the respondents, the civil service commissioners, forthwith restore petitioner to the position of Expert on System and Organization and permit him to discharge the duties thereof, and that the city treasurer and comptroller be ordered to pay him his salary from May .8, 1915, up to and including the date that petitioner is restored.

At the outset we have the contention of appellants that the employees with the Civil Service Commission are not under civil service, and this is predicated upon the assertion that the Civil Service Commission is a body corporate, existing as an independent board not subject to the control of the city council; hence it is said that the provision of the Civil Service Act (section 3, ch. 24, J. & A. ¶ 1801), requiring the classification of all employees of the city, does not apply. We cannot agree with this contention. Examination of the Civil Service Act discloses that the exercise of duties imposed upon the commission is in many ways connected with, related to and dependent upon the city council. Among other things the act provides that the mayor of the city shall appoint three persons as civil service commissioners of the city; that the mayor in his discretion may remove any commissioner, and shall report such removal to the city council with his reasons therefor. Section 3 provides that "said commissioners shall classify all the offices and places of employment in such city." The act also provides that the commissioners shall on or before January 15th of each year make to the mayor for transmission to the city council a report showing its action, rules and "the practical effects thereof, and any suggestions it may approve for the more effectual accomplishment of the

purposes of this act." Section 17 (J. & A. ¶ 1816) requires that the officers of a city adopting the act aid the commission in all proper ways in carrying out the provisions of the act, and for this purpose shall allow reasonable use of public buildings for holding examinations, and suitable rooms are to be provided for the commission at the expense of the city. It is also provided that a city adopting the act shall appropriate a sufficient sum of money to carry out the provisions of the act. There are also other provisions touching the relations between the city and the commissioners, all of which indicate that the commission is not an independent body but is one of the departments or bureaus of the City of Chicago. It follows, therefore, that the persons in the positions or offices in this department are employees of the city and come under the provisions of the act requiring classification. In so holding we are following the reasoning in *Brenan v. People,* 176 Ill. 620; *People v. Kipley,* 171 Ill. 44; and *People v. Loeffler,* 175 Ill. 585. We find nothing decided in the cases cited by appellants which dissuades us from this conclusion. It occurs to us that it would be rather an anomalous situation for the employees of the Civil Service Commission, the guardian of efficiency and permanency in public service, to be unprotected themselves by the Civil Service Act.

If we are correct in the above conclusion, it follows logically that the civil service commissioners have no power either to create or abolish an office. This is self-evident and needs no citation of precedent to support it.

Prior to July 1, 1915, and at the time relator was appointed, section 18 of the Civil Service Act (J. & A. ¶ 1817) provided that the expenses for "clerk hire, printing, stationery, and other incidental matters" should not exceed $5,000 per year. It is argued from this that as the appropriations made exceeded this

sum there was no valid appropriation for the position claimed by the relator, and hence his employment was prohibited. To this it is sufficient to reply that nothing in the Civil Service Act prohibits the city council from creating an office or assigning such office to any department of the municipality the council might deem desirable. If the council legally created the office of Expert on System and Organization, the appropriation for the salary attached thereto was not affected by section 18 of the Civil Service Act. Further, section 19 of the act (J. & A. ¶ 1818) provides that "a sufficient sum of money shall be appropriated each year by each city which shall adopt this act, to carry out the provisions of this act in such city." In view of this section and other provisions of the act prescribing the duties to be performed by the commission, we hold that the $5,000 limitation in section 18 was designed to limit the commissioners in the expenses which they might incur, and not to limit the city council in the amount of its appropriation.

It also might be said that it does not necessarily follow that failure of the provision for salary prohibits the creation of an office. *Bunn v. People,* 45 Ill. 400; Throop on Public Officers, sec. 8.

On July 1, 1915, section 18, *supra,* was amended so as to authorize the commissioners to "incur expenses not exceeding the amount appropriated therefor by the city council"; and while we do not think this affects the creation of the office, it does operate to remove any question as to the legality of the salary. *Town of Fox v. Town of Kendall,* 97 Ill. 72.

Except as to the points above considered, this proceeding is essentially the same in character as *People ex rel. Blachly v. Coffin,* No. 22,396, *ante,* p. 100, and *People ex rel. Jensen v. Coffin,* No. 22,397, *ante,* p. 103, of this court, in which opinions are this day handed down. Much of what we said in those opinions is applicable to the instant case.

As in those cases, it is contended by appellants that the petition avers conclusions instead of ultimate facts. We do not think so. All the ordinances and orders pleaded are set forth *in haec verba*, and while some averments may be subject to question, yet there are sufficient material averments of fact to make out a case for the petitioner.

It is especially urged that it cannot be said that by the language used in the ordinances the position in question was created, and the cases of *Moon v. Mayor*, 214 Ill. 40, and *Bullis v. City of Chicago*, 235 Ill. 472, are presented as holding that an appropriation only for an office does not create the office. We repeat what we have before said in our other opinions that in these cases it appears clearly by definite language in the ordinances that the positions there under consideration should be afterwards created by another ordinance. That is not the situation before us. We are of the opinion that the correct rule is that it is not necessary for the creation of an office that the council declare in express words that such office is created. The use of any language which shows the intent to create the office is sufficient. We believe this is supported by *Wood v. Blanchard*, 19 Ill. 38, and *People v. McCann*, 247 Ill. 130. The language used in the various ordinances before us contemplates more than an appropriation. The provision, which is essentially the same in all the ordinances, is that "the titles hereinafter set out, of positions under civil service, are, and shall be construed to be, the official civil service titles of the positions for which appropriations are made." And again, "that the titles and compensation fixed herein for same, or positions under civil service, are, and shall be construed to be, the official civil service titles and the official compensation for same of the positions for which appropriations are made, in accordance with the classification of positions

made under the provisions of an ordinance passed by the city council July 15, 1912, authorizing the classification of all civil service positions and providing for uniform grading and compensation in the classified service of the city based upon character and responsibility of duties and seniority and efficiency in the performance of same.'' This clearly is language showing an intent to create the office. The express language creating the title of the office carries with it the implication of the creation of the office itself.

There is force in the contention of counsel for the appellee that the decision in *Law v. People,* 87 Ill. 385, that the appropriation of money for the payment of salary to an office necessarily presupposes and implies the existence of the office, has not been overruled by the decisions in the *Moon* and *Bullis* cases, *supra.* Undoubtedly the decision in the *Law* case was as claimed, the court saying that the city council ''would not have been guilty of the extreme folly of making appropriations for paying the expenses of such offices when none existed.'' However this may be, we base our opinion on this point upon our conclusion that the language of the ordinances under consideration is sufficient to show an intention to create the office, and this is all that is required.

The petition is not obnoxious to general demurrer on the ground that it seeks two different kinds of relief. *McArdle v. City of Chicago,* 172 Ill. App. 142; *People v. Stevenson,* 272 Ill. 215. See also, what is said on this point in Nos. 22,396 and 22,397, *ante,* pp. 100, 103, this day filed.

Appellant is right in pointing out that the trial court was in error in awarding an execution against the municipality for costs. This was a technical error which may be corrected in this court, following the procedure authorized in *Village of Itasca v. Schroeder,* 182 Ill. 192. The error in ordering execution against the City

of Chicago will be corrected by an order entered in this court directing the Circuit Court to amend its record in that respect. In all other respects the order and judgment of the Circuit Court will be affirmed.

*Affirmed.*